CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
11/14/2018
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSE ORANGEL SARAVIA-CHAVEZ,<br><br>*Defendant.* | CASE NO. 3:18-cr-00016<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Jose Orangel Saravia-Chavez's motion to dismiss the indictment. (Dkt. 22). The indictment contains one count, charging Saravia-Chavez with illegally reentering the United States in violation of 8 U.S.C. § 1326. (Dkt. 1). Saravia-Chavez argues that the indictment should be dismissed because the notice to appear initially issued to him failed to specify the time and date of the removal proceedings against him, as required by 8 U.S.C. § 1229(a)(1) and *Pereira v. Sessions*, 138 S.Ct. 2105 (2018). Saravia-Chavez advances two specific attacks on the indictment. First, Saravia-Chavez argues that without a valid notice to appear, subject matter jurisdiction never vested in the immigration court, rendering that court's deportation order a legal nullity. Second, Saravia-Chavez launches a collateral attack against his deportation order under 8 U.S.C. § 1326(d), arguing that his initial deportation proceedings lacked fundamental fairness.

Although conceding that the notice to appear issued to Saravia-Chavez was defective under § 1229(a)(1) and *Pereira*, the Government argues that the indictment should be upheld for two reasons. First, the Government asserts that federal regulations, not § 1229(a)(1) or *Pereira*, control when and how subject matter jurisdiction vests in an immigration court, and these regulations do not require that a notice to appear list the time and place of any removal

1

proceeding. Second, the Government contends that Saravia-Chavez's collateral attack under § 1326(d) fails because Saravia-Chavez cannot show that he exhausted administrative remedies, that he was deprived of an opportunity for judicial review, or that his deportation proceedings were fundamentally unfair.

The Government is correct that the immigration court had subject matter jurisdiction over Saravia-Chavez's deportation proceedings under the governing regulations. Moreover, Saravia-Chavez's collateral attack on the underlying deportation order fails because, although the initial notice to appear lacked the time, date, and place of the removal proceedings, Saravia-Chavez received subsequent notice of these details, attended his deportation hearing, and admitted to facts that supported the issuance of a deportation order. Saravia-Chavez therefore cannot make the necessary showing under § 1326(d) that his deportation proceedings were fundamentally unfair. Accordingly, the motion to dismiss the indictment has been denied. (Dkt. 36).

## I. FACTS & KEY PRECEDENT

### A. Factual Background

On July 25, 2018, Jose Orangel Saravia-Chavez was indicted on one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326. (Dkt. 1). Saravia-Chavez, allegedly a native of El Salvador, was initially served in person with a notice to appear on April 14, 2011. (Dkt. 22-1). This notice to appear ordered Saravia-Chavez to appear on "a date to be set" and "at a time to be set" to "show why [he] should not be removed from the United States." (*Id*.). The notice nowhere specified the time or date when Saravia-Chavez should appear, or the place where Saravia-Chavez should appear. The Government avers that, days after receiving the initial notice to appear, while still in custody, Saravia-Chavez received notice in person of the date, time, and place of his removal hearing. (Dkt. 30 at 5; 30-1 at 7). On April 26, 2011,

Saravia-Chavez attended his removal hearing, at which he was ordered deported on the basis of his own "admissions." (Dkt. 22-2). The immigration court's removal order indicates that Saravia-Chavez waived his right to appeal the order and that Saravia-Chavez was personally served with a copy of the order on April 26, 2011. (*Id.*). The Government avers that Saravia-Chavez was removed from the United States on or about May 12, 2011, (dkt. 30 at 1), and that he later came to the attention of federal law enforcement following his arrest on January 17, 2018 "on felony strangulation and misdemeanor domestic assault charges in Albemarle County." (*Id.*). The illegal reentry charge at issue followed.

    **B.**     *Pereira v. Sessions* **(2018)**

In *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), the Supreme Court considered whether "notices to appear" in deportation proceedings that do not specify the time and place of removal proceedings against a noncitizen qualify as "notices to appear" under 8 U.S.C. § 1229(a)(1) for purposes of the "stop-time rule" under 8 U.S.C. § 1229b(d).[1] The Court held that such notices to appear are not true "notices to appear" as defined by § 1229(a)(1). *Pereira*, 138 S.Ct. at 2113–14. The Court's holding rested primarily on the plain text of § 1229(a)(1), which requires that a "notice to appear" be given to noncitizens facing removal proceedings, and defines a "notice to appear" as "written notice" specifying certain information, including the "time and place at which the proceedings will be held." *Id*. The Court noted that "common sense compels the conclusion" that if the "three words 'notice to appear' mean anything . . . they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, *i.e.*, the

---

[1]     Under § 1229b(d)—a statutory section not at issue here but important to understanding *Pereira*'s holding—the Attorney General can cancel removal of non-permanent residents who have at least ten years of continuous presence in the United States and permanent residents who have at least seven years of continuous presence in the United States. Under the "stop-time" rule, these periods end when the Government serves a "notice to appear" as defined by § 1229(a)(1). *See Pereira*, 138 S.Ct. at 2110.

'time' and 'place,' that would enable them 'to appear' at the removal hearing." *Id*. at 2115. The parties now dispute how *Pereira* applies in contexts beyond application of the stop-time rule, namely in illegal reentry prosecutions where, as here, the underlying notice to appear provided to the noncitizen and filed with the immigration court fails to specify the time and date of the removal proceedings.

## II. STANDARD OF REVIEW

Criminal defendants may allege defects in indictments in pretrial motions, including "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). *See also United States v. Daniels*, 873 F.2d 272, 274 (4th Cir. 1992) ("An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense."). A reviewing court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F.Supp.2d 634, 636 (W.D. Va. 1999). A court should not dismiss an indictment on the basis of "facts that should" be "developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Rather, motions to dismiss indictments should generally be denied unless "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

Collateral attacks of deportation orders are authorized where, as here, those orders are necessary to establish an element of the charged illegal reentry offense.[2] *See United States v.*

---

[2] The elements of illegal reentry under 8 U.S.C. § 1326 are as follows: (1) the defendant

*Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). Under § 1326(d), a defendant mounting a collateral attack against an underlying deportation order must show (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review; and (3) entry of the order was "fundamentally unfair." If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

### III. ANALYSIS

Saravia-Chavez advances two arguments in support of his motion to dismiss the indictment. First, he argues the indictment should be dismissed because subject matter jurisdiction never vested in the immigration court. Second, he contends the indictment should be dismissed under the factors set forth for a collateral attack on a deportation order in 8 U.S.C. § 1326(d). The Court addresses each argument in turn below.

#### A.  Immigration Court's Subject Matter Jurisdiction over Removal Proceeding

Saravia-Chavez first argues that the indictment should be dismissed because the allegedly deficient notice to appear issued to him prevented subject matter jurisdiction from vesting in the immigration court. Saravia-Chavez contends that a removal proceeding commences, and jurisdiction vests with the immigration court, only by the filing of a charging document such as a

---

"has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) the defendant thereafter "enters, attempts to enter, or is at any time found in the United States" without express advance consent from the Attorney General. 8 U.S.C. § 1326(a). The Fourth Circuit has recognized that a valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

5

notice to appear, which *Pereira* and § 1229(a) establish must contain the time and place of the removal proceedings. (Dkt. 22 at 4–5). Saravia-Chavez argues that where a notice to appear "fails to include notification of the time and place of a removal hearing, the document does not qualify as a charging document so as to confer jurisdiction over an alien" to the immigration court, rendering any subsequent deportation *ultra vires* and void. (*Id.* at 7).

This argument fails. Neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, separate federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction.[3] Specifically, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." For all proceedings "initiated after April 1, 1997," a "charging document" is defined by a separate regulation to "include a Notice to Appear." 8 C.F.R. § 1003.13. Yet another regulation—8 C.F.R. § 1003.15(b)-(c)—lists the specific items that must be included in a notice to appear filed with the immigration court for jurisdictional purposes.

Section 1003.15(b) lists seven items a notice to appear should contain, but the time and place of the removal proceedings is not among the listed criteria. Section 1003.15(c) lists five additional items that should be provided to the immigration court in a notice to appear, but, here again, the time and place of the removal proceedings is not among the listed criteria. Neither § 1003.15(b) nor § 1003.15(c) cross-reference 8 U.S.C. § 1229(a)(1).

---

[3]   Congress explicitly granted the Attorney General authority to "establish such regulations" as he "determines to be necessary for carrying out" the Immigration and Nationality Act. 8 U.S.C. § 1103(g)(2). Pursuant to this statutory delegation, the Attorney General promulgated a comprehensive regulatory framework governing immigration court proceedings, including regulations concerning when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. *See generally* 8 C.F.R. § 1003.

By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes, *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear "given . . . to the alien" either in person, by mail, or by delivery to the alien's counsel.[4] Section 1229(a)(1)(A)-(G) lists ten items that must be specified in notices to appear given to the alien, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Neither § 1229(a)(1) nor *Pereira* address the immigration court's subject matter jurisdiction over the proceeding.

The Court finds that 8 C.F.R. § 1003.14 and § 1003.15—not 8 U.S.C. § 1229(a)(1) and *Pereira*'s interpretation of that statutory provision—control when and how subject matter jurisdiction vests in an immigration court. Fourth Circuit precedent supports this conclusion. *See, e.g., Sorcia v. Holder*, 643 F.3d 117, 119 n.1 (4th Cir. 2011) (citing § 1003.14(a) for proposition that jurisdiction vests upon filing of notice to appear with the immigration court); *Shogunle v. Holder*, 336 F. App'x 322, 324–25 (4th Cir. 2009) (holding jurisdiction never vested in immigration court because no notice to appear had been filed with the court per § 1003.14(a)).

---

[4] At oral argument, defense counsel argued that because 8 C.F.R. § 1003.15 and 8 U.S.C. § 1229(a)(1) refer to the same notice to appear, the content requirements listed in § 1229(a)(1) and further clarified by *Pereira* must be read into the content requirements listed in § 1003.15. Counsel contended that any other reading of the statutory and regulatory scheme would be absurd. Counsel may be correct that the same notice to appear issued to the alien pursuant to § 1229(a)(1) is often, if not always, the same notice to appear filed with the immigration court for jurisdictional purposes pursuant to § 1003.14 and § 1003.15. But the conclusions counsel draws from this point are flawed in two respects. First, even if the statute and the regulations refer to the same notice to appear, it does not necessarily follow that the time and place criteria listed in § 1229(a)(1) for purposes of providing notice to the alien must be imported into § 1003.14 and § 1003.15, which serve the distinct purpose of establishing the immigration court's subject matter jurisdiction. Second, it is not at all absurd that, under the current statutory and regulatory scheme, the contents of the same notice to appear filed with the immigration court and provided to an alien could be sufficient for subject matter jurisdiction purposes under 8 C.F.R. § 1003 but deficient for notice purposes under *Pereira* and 8 U.S.C. § 1229(a)(1). These provisions serve different purposes, and the Court declines to read the two provisions as requiring identical criteria when *Pereira* does not so require and the two provisions are workable as written.

At least one district court has reached the same conclusion in a post-*Pereira* decision. *See United States v. Romero-Colindres*, No. 1:18-cr-00415, 2018 WL 5084877, at *2 (N.D. Oh. Oct. 18, 2018) (noting that neither the "vesting provision [of 8 C.F.R. § 1003.14(a)] nor the definition of charging document under section 1003.13 expressly require that an NTA meet the statutory requirements of 8 U.S.C. § 1229(a)(1)").[5] Here, Saravia-Chavez makes no argument that the notice to appear filed with the immigration court is deficient under 8 C.F.R. § 1003.15. Accordingly, the Court declines to dismiss the indictment on jurisdictional grounds.

B.  **Saravia-Chavez's Collateral Attack Under 8 U.S.C. § 1326(d)**

Saravia-Chavez also advances a collateral attack on his deportation order pursuant to 8 U.S.C. § 1326(d), which permits an alien to "challenge the validity" of the deportation order underlying an illegal reentry prosecution if the alien can demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." If an alien "satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

Unlike in the subject matter jurisdiction inquiry addressed above, *Pereira* and the content

---

[5] Saravia-Chavez asks the Court to follow two post-*Pereira* district court decisions invalidating indictments charging defendants with illegal reentry on subject matter jurisdiction grounds. *See, e.g., United States v. Zapata-Cortinas*, No. 18-cr-00343, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018) (dismissing indictment under *Pereira* where notice to appear lacked time and place details, reasoning that subject matter jurisdiction never vested because of deficient notice to appear); *United States v. Virgin-Ponce*, No. 2:18-cr-00092, 2018 WL 3655166 (E.D. Wash. July 26, 2018) (same). However, these holdings confuse the requirements for notices to appear filed with the immigration court for jurisdictional purposes under 8 C.F.R. § 1003 with the requirements for notices to appear provided to the alien under 8 U.S.C. § 1229(a)(1)—*Pereira* establishes that time and place details are required for the latter but 8 C.F.R. § 1003.15(b)-(c) do not require such details for the former.

requirements for notices to appear issued to aliens listed in 8 U.S.C. § 1229(a)(1) have bite in the § 1326(d) inquiry. The Government concedes, as it must, that the notice to appear issued to Saravia-Chavez failed to list the time, date, and place of the removal proceedings. (Dkt. 30 at 4). This defect renders this notice to appear deficient under *Pereira* and the plain text of § 1229(a)(1).[6] *See* 8 U.S.C. § 1229(a)(1)(G)(i) (specifying that notices to appear issued to aliens must include the "time and place at which the proceedings will be held"); *Pereira*, 138 S.Ct. at 2113–114 ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear' under section 1229(a) . . ."). The only question, then, is whether this defect in the notice to appear, and its attendant practical consequences, are sufficient for Saravia-Chavez to challenge the deportation order issued against him under 8 U.S.C. § 1326(d). The Court concludes that Saravia-Chavez cannot successfully attack the validity of his deportation order under § 1326(d).

With respect to the first two prongs of the § 1326(d) inquiry—exhaustion of administrative remedies and deprivation of judicial review—the Government argues that Saravia-Chavez cannot demonstrate exhaustion because he "waived his right to appeal the removal decision at the time of the removal hearing." (Dkt. 30 at 5). Saravia-Chavez argues that he "was not required to exhaust his administrative remedies or seek judicial review" because the

---

[6] The Government attempts to cabin *Pereira* to its specific factual context, the stop-time rule of 8 U.S.C. § 1229b(d). (Dkt. 27 at 7–11). Although the *Pereira* majority indicated that the specific question presented in *Pereira* was "narrow," the majority held that because § 1229(a) employs "quintessential definitional language" in elucidating the required content of a notice to appear, "when the term 'notice to appear' is used elsewhere in the statutory section, *including as the trigger for the stop-time rule*, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S.Ct. at 2116 (emphasis added). Thus, *Pereira* makes clear that the stop-time rule of § 1229b(d) is just one application of its holding regarding the required contents of a notice to appear issued to an alien under § 1229(a). Accordingly, the Government's contention that "this case is outside the scope of *Pereira*'s limited holding" is without merit. (Dkt. 27 at 1).

immigration court lacked jurisdiction and thus the removal proceedings were void, and because "it would have been futile" to "pursue administrative exhaustion and judicial review" under a 2011 Board of Immigration Appeals (BIA) decision holding that a putative notice to appear has legal effect "regardless of whether the date and time of the hearing have been included in the document." *Matter of Camarillo*, 25 I. & N. Dec. 644, 651 (BIA 2011). (Dkt. 22 at 14).

The Court rejected Saravia-Chavez's subject matter jurisdiction argument above. Furthermore, the Court finds no merit in the argument that a BIA decision issued in December 2011—months after Saravia-Chavez's deportation hearing in April 2011—rendered his ability to pursue administrative exhaustion and judicial review completely futile. Additionally, the copy of the deportation order Saravia-Chavez provided, (dkt. 22-2), indicates that Saravia-Chavez waived his right to appeal the order. Saravia-Chavez nowhere argues that this waiver was unknowing or involuntary. A knowing and voluntary waiver of the right to appeal a removal order generally constitutes a failure to exhaust administrative remedies. *United States v. Lopez*, 667 F. App'x 837, 838 (4th Cir. 2016) ("If . . . an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d)." (quoting *United States v. Cerna*, 603 F.3d 32, 38 (2d Cir. 2010))).

Moreover, the Court notes that this is not a case where immigration officials' "failure to provide notice precluded [the defendant] from attending his deportation hearing in the first instance." *El Shami*, 434 F.3d at 664. In such cases, the Fourth Circuit has held that a defendant is not genuinely "apprised of his right to seek . . . administrative and judicial review," and thus "satisfies the first two requirements for a collateral attack under § 1326(d)." *Id*. Here, Saravia-Chavez received notice of the time, date, and place of his removal hearing days after receiving

the defective initial notice to appear, appeared at the hearing, and admitted to facts supporting a deportation order. (Dkt. 30 at 5; 30-1 at 7).

Nonetheless, the Court finds it unnecessary to affirmatively reach whether Saravia-Chavez is excused from showing exhaustion of administrative remedies and deprivation of judicial review because, even assuming that Saravia-Chavez satisfies these first two prongs, Saravia-Chavez cannot show that his deportation proceedings were fundamentally unfair. To demonstrate fundamental unfairness under § 1326(d), an alien must show that "(1) his due process rights were violated by defects in his underlying deportation proceeding; and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 665. An alien's "fundamental" right of due process includes "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 664–65 (quoting *United States v. Torres*, 383 F.3d 92 (3d Cir. 2004)). "[D]ue process requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id.* at 665. To demonstrate prejudice, the alien must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *Id. See also United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (noting that "the defect in the removal proceedings" identified by the district court "must be linked" to the "resulting prejudice" for a district court to find fundamental unfairness).

The Court finds that immigration officials' failure to list the time, date, and place of Saravia-Chavez's deportation proceedings on the initial notice to appear, (dkt. 22-1), did not violate Saravia-Chavez's due process rights. This is so because the defects in the initial notice to appear Saravia-Chavez received ultimately did not deprive Saravia-Chavez of "the opportunity to be heard at a meaningful time and in a meaningful manner." *El Shami*, 434 F.3d at 664–65.

Despite the deficiencies in the initial notice to appear, Saravia-Chavez had "notice of the charges against him," received notice days later of the date, time, and place of his removal hearing, (dkt. 30-1 at 7), and attended that hearing, where he had a "fair opportunity to be heard" by the immigration judge. *El Shami*, 434 F.3d at 664–65. Accordingly, the deficiencies in the notice to appear Saravia-Chavez received ultimately do not rise to the level of a due process violation.

However, even assuming that these deficiencies violated Saravia-Chavez's due process rights, Saravia-Chavez cannot show that the alleged due process violation resulted in actual prejudice. Apart from the jurisdictional arguments this Court has already rejected, Saravia-Chavez presents no substantive argument that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *Id*. Defense counsel briefly notes that "based on his minimal criminal history, Mr. Saravia-Chavez appears to have been eligible for voluntary departure at the time of the 2011 proceedings." (Dkt. 22 at 13, n.4). But counsel has provided no further briefing on this issue and did not address this point at oral argument. Even if counsel is correct that Saravia-Chavez may have been eligible for voluntary departure at the time of his 2011 deportation proceedings, Saravia-Chavez could have sought voluntary departure prior to or at his April 26, 2011 removal hearing, which Saravia-Chavez received notice of and attended despite the deficiencies in the initial notice to appear. *See* § 8 C.F.R. 1240.26(b)(1)(i) (alien may seek voluntary departure prior to or at master calendar hearing); § 1240.26(b)(2) (alien may seek voluntary departure via stipulation by the Service prior to the completion of removal proceedings); § 1240.26(c)(1) (immigration judge may grant voluntary departure at the conclusion of removal proceedings). Nothing in the record shows that Saravia-Chavez attempted to avail himself of these opportunities but was thwarted by the deficiencies in the initial notice to appear he received. Thus, Saravia-Chavez's failure to seek and secure

12

voluntary departure cannot be attributed to the deficiencies in the notice to appear. *See Lopez-Collazo*, 824 F.3d at 462 (the "defect in the removal proceedings" complained of "must be linked" to the "resulting prejudice"). Accordingly, Saravia-Chavez has failed to make the necessary showing for a finding of fundamental unfairness that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665.

In sum, the Court finds that Saravia-Chavez is precluded from collaterally attacking his deportation order under § 1326(d) because, at a minimum, he fails to show that the defects in the initial notice to appear rendered his deportation proceedings fundamentally unfair.

## IV. CONCLUSION

For the foregoing reasons, the Court denied Saravia-Chavez's motion to dismiss the indictment. (Dkt. 36).

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order, (dkt. 36), to all counsel of record.

Entered this 14th day of November, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE